United States District Court
Southern District of Texas

**ENTERED**

February 19, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Ronald Bob, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-24-4642 |
| | § | |
| Deutsche Bank National Trust | § | |
| Company, et al., | § | |
| *Defendants.* | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS AND
ORDER ON PLAINTIFF'S REMAINING MOTIONS**

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 43. Pending before the court are Defendants' Motion to Dismiss, ECF No. 24; Plaintiff's Motions for Leave to Refile Stricken Motions, ECF Nos. 38, 41, 42; Plaintiff's Motion for Leave to Conduct Limited Discovery, ECF No. 49; Plaintiff's Motion for Leave to File a Jurisdictional Notice and a Motion Addressing Standing, ECF No. 50; and Plaintiff's Motion to Declare Conveyance, ECF No. 51. The court recommends that Defendants' Motion to Dismiss, ECF No. 24, be **GRANTED**. Plaintiff's pending motions, ECF Nos. 38, 41, 42, 49, 50, and 51, are **DENIED as MOOT**.

### *1. Background and Procedural History*

Plaintiff Ronald Bob, proceeding pro se, alleges multiple claims related to the completed foreclosure on his home at 4010 Cypress Hill Drive, Spring, Texas 77388 (the Property). *See* ECF No. 1-1 at 5. Plaintiff seeks to set aside the foreclosure sale of the Property, which occurred in March 2024, as well as monetary damages. *Id.* at 23, 29.

Before turning to the facts, it is necessary to discuss the sources from which those facts are drawn. Generally, when considering a motion to dismiss, the court must limit itself to: (1) the facts in the complaint; (2) documents attached to the complaint; and (3) matters of which the court may take judicial notice. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The court also has discretion to consider exhibits attached to the complaint, as well as exhibits attached to a motion to dismiss, if they "are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Additionally, "the district court may properly take judicial notice of public state court records." *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020).

Of course, the court considers Plaintiff's Complaint, ECF No. 1-1 at 5–30, and its attachments, which include (1) a Business Records Affidavit from the eviction suit against Plaintiff involving the Property,[1] ECF No. 1-1 at 32–33; (2) the Substitute Trustee's Deed with attached Affidavit of Yosemite Lopez and Notice of Foreclosure Sale, ECF No. 1-1 at 34–41; (3) the Deed of Trust and its Riders, ECF No. 1-1 at 42–66, and (4) correspondence sent to Plaintiff regarding the foreclosure and associated tracking information, ECF No. 1-1 at 67–89. To their Motion to Dismiss, Defendants attached (1) the Warranty Deed, ECF No. 24-1; (2) the Adjustable Rate Balloon Note (Note), ECF No. 24-2; (3) the Deed of Trust, ECF No. 24-3, and (4) the Transfer of Lein,

---

[1] *Deutsche Bank Nat'l Tr. Co. v. Bob*, No. 1231724 (Harris Co. Ct. at Law No. 4, Tex. Apr. 19, 2023). The state trial court awarded Deutsche Bank a writ of possession on the Property. *Id.* The Bobs appealed the case to the Fourteenth Court of Appeals of Texas, but the appeal was dismissed as moot. *Bob v. Deutsche Bank Nat'l Tr. Co.*, No. 13-24-00636-CV, 2025 WL 454225 (Tex. App.—Houston [14th Dist.] Feb. 11, 2025, no pet.).

ECF No. 24-4. The court considers the documents submitted by Defendants because Plaintiff's Complaint refers to them, and they are central to Plaintiff's claims.

Additionally, because Plaintiff did not respond to Defendant's Motion to Dismiss, it is deemed unopposed. *See* S.D. Tex. L.R. 7.4 (stating that failure to respond to a motion is "taken as a representation of no opposition"). Therefore, the court may accept the unopposed facts set forth in the motion as undisputed. *Cf. Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (affirming the district court's acceptance of the facts in support of the defendant's summary judgment motion as undisputed, where the plaintiff made no opposition to the motion).

### A. Background Facts

In February 2006, Plaintiff and his spouse[2] obtained a home mortgage loan (Loan) in the amount of $108,000.00, from New Century Mortgage Corporation (New Century). ECF No. 1-1 at 18, 42–43. The Loan encumbered the Property. *Id.* at 42–43. The Loan was memorialized through the Deed of Trust and Note, which were both recorded in Harris County. *Id.* at 42–66; ECF No. 24-4.

On August 16, 2011, pursuant to a Transfer of Lien, Deutsche Bank National Trust Company (Deutsche Bank), as Trustee for Ixis Real Estate Capital Trust 2006-HE2 Mortgage Pass Through Certificates, Series 2006-HE2, obtained "all of the right, title and interest owned or held by" New Century in the Deed of Trust. ECF No. 24-4 at 1. The Transfer of Lien was recorded in Harris County on August 26, 2011. *Id.* at 2.

Plaintiff asserts that he made timely monthly payments under the Loan until June 1, 2020. ECF No. 1-1 at 22. Plaintiff was

---

[2] Although the listed "Borrower" on the Deed of Trust is "CHRISTINA BOB, A Married Woman," it appears to the court that Plaintiff initialed and signed the Deed of Trust and its attachments. ECF No. 1-1 at 42–66. The notarization states that "on this day personally appeared Christina Bob and spouse, Ronald Bob . . . ." *Id.* at 57.

informed that he had defaulted on his Loan obligations in late 2020. *Id.* at 23. Plaintiff also asserts that PHH Mortgage Company (PHH), acting on behalf of Deutsche Bank, issued and signed a Notice of Default on October 17, 2022, and 91-days later, a Notice of Trustee Sale. *Id.* at 23, 37–39. Plaintiff states that he received both notices. *Id.* at 18. Nevertheless, Plaintiff "disputes the validity of the default" and asserts that he "made timely payments . . . ." *Id.* at 18.

Plaintiff also alleges that he was not provided with adequate notice or documentation of the foreclosure process or foreclosure sale. ECF No. 1-1 at 7, 18. These allegations are contradicted by Plaintiff's own evidence. Plaintiff attached the "Affidavit of Notice to Debtors" to his Complaint. ECF No. 1-1 at 40 (Lopez Aff.). In the Affidavit, Yosemite Lopez, Trustee Sale Assistant, states:

> The attached Notice of Trustee's Sale was posted at least twenty-one (21) days preceding the date of the sale and the Courthouse door of the County in which the property is located and a signed Notice of Trustee's Sale was filed in the office of the County Clerk of such county at least twenty-one (21) days preceding the date of the sale. In addition, a notice of acceleration and Notice of Trustee's Sale was served upon all debtors obligated to pay the debt according to the records of the mortgagee by certified mail at the last known address for each debtor in accordance with law.

> The debtor(s) in default . . . were served written notice by certified mail of their default, and given proper time to cure the default in accordance with law.

*Id.* Ms. Lopez's Affidavit is prima facie evidence that Plaintiff received proper notice under the Loan. *See* Tex. Prop. Code Ann. § 51.002(e) ("The affidavit of a personal knowledgeable of the facts to the effect that service was completed is prima facie evidence of service."). Other than conclusory allegations, Plaintiff does not

4

present any facts to show that the Affidavit, which he attached to his own Complaint, is inaccurate.

Plaintiff alleges that he "requested a loan modification or other loss mitigation options, but Defendants failed to engage in a good faith review" of the application and pursued foreclosure. ECF No. 1-1 at 7. In 2024, Power Default Services Inc. (Power Default), allegedly acting on behalf of Deutsche Bank and Altisource Solutions, Inc. (Altisource), initiated foreclosure on the Property. *Id.* A foreclosure sale was held on March 5, 2024. *Id.* at 34. Deutsche Bank purchased the Property for $230,972.51. *Id.*

### B. Procedural History

On October 29, 2024, Plaintiff filed suit against New Century, Deutsche Bank, PHH, Altisource, and Power Default (collectively, Defendants) in the 295th District Court of Harris County, Texas. ECF No. 1-1 at 5. At the time of the lawsuit, Deutsche Bank was the mortgagee of record on the Property, and PHH was the Loan servicer. ECF No. 24 at 6. Power Default "provided trustee services in connection with the foreclosure[,] and Altisource is an affiliate of Power Default. *Id.* Plaintiff asserts various claims related to the Loan and the foreclosure of the Property. He appears to assert all of his claims against all of the Defendants, without distinguishing between the parties.

It does not appear that Plaintiff ever effectuated service of process on Defendants. *See* ECF No. 1-4 ("No party has been properly served to date."). Nevertheless, Defendants removed the case to federal court on November 25, 2024. ECF No. 1. Approximately two weeks later, Defendants, seeking leave to file a motion to dismiss, filed a letter requesting a pre-motion conference before the court. ECF No. 8. The request was referred to the undersigned on March 21, 2025. ECF No. 16. On April 3, 2025, the undersigned held the requested pre-motion conference

via video. ECF No. 20. Plaintiff was present. *See id.* During the conference, the court granted Plaintiff's oral motion for leave to file an amended complaint. *Id.* It ordered Plaintiff to file an amended complaint that addressed "all of the deficiencies identified in Defendants' letter, ECF No. 8," by April 24, 2025. *Id.* Additionally, the court warned: "The court is not likely to grant further leave to amend" the complaint. *Id.*

Plaintiff did not file an amended complaint by the court's deadline. On May 15, 2025, Defendants moved to dismiss all of Bob's claims for failure to state a claim. ECF No. 24. Plaintiff did not respond to Defendant's motion. On June 27, 2025, Defendants filed a Notice of No Response, in which they requested that the court consider their Motion to Dismiss unopposed. ECF No. 26 (citing S.D. Tex. L.R. 7.4)). Just over five weeks later—and four months since the court granted Plaintiff's first request for leave to amend his Complaint—Plaintiff filed a new Motion for Leave to File First Amended Complaint. ECF No. 27. On November 17, 2025, the court struck the motion for failure to comply with the Southern District of Texas's Local Rules. ECF No. 46. Plaintiff did not refile the motion, and he has not otherwise repeated his request to amend the complaint.

While the court considers Defendants' Motion to Dismiss to be unopposed, the court will not grant a dispositive motion merely *because* it is unopposed. *See Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980) (reversing the district court's decision to grant defendants' motions to dismiss merely because they were unopposed). Instead, the court considers the Motion on its merits.

### *2. Motion to Dismiss Standard*

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the court determines whether the plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "A plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Id.* at 556.

Only statements of *fact* are to be taken as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Conclusory allegations are "disentitled . . . to the presumption of truth." *Id.* at 681. Thus, the court, in reviewing the plaintiff's

7

complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

The court liberally construes pro se pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless doing so would be futile. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.").

### 3. Standing to Foreclose

Before turning to each specific cause of action Plaintiff alleges in his Complaint, the court will address an issue that Plaintiff raises throughout his pleadings—whether Defendants had standing to foreclose on Plaintiff's property. Plaintiff bakes into all of his causes of action the notion that Defendants lacked standing. This argument is based on a misunderstanding of Texas law.

In *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013), the Fifth Circuit addressed and rejected the same arguments that Plaintiff now asserts. There, the homeowner presented an argument "conflating ownership of a note with constitutional standing." *Martins,* 722 F.3d at 252–53. The homeowner also argued that the servicer could not foreclose on her home mortgage loan because (1) the assignment was defective, and (2) even if it was a valid assignment of the mortgage, the servicer was only assigned the mortgage, and not the promissory note. *Id.* at 252–56.

The Fifth Circuit found that the homeowner's argument merged two common theories on which mortgagees in wrongful-foreclosure cases often attempt to rely: the "show-me-the-note" theory and the "split-the-note" theory. *Martins,* 722 F.3d at 253. The show-me-the-note theory "posits that to foreclose, a party must produce the original note bearing a 'wet ink signature.'" *Id.* The split-the-note theory is that the foreclosing "party must hold both the note and the deed of trust." *Id.* at 254.

The court rejected both theories. It held that in Texas, "[t]he original, signed note need not be produced in order to foreclose." *Martins,* 722 F.3d at 254. Additionally, it held that "where the foreclosing party is a mortgage servicer, and the mortgage has been properly assigned[, t]he party to foreclose need not possess the note itself." *Id.* at 255.

In *Martins,* the evidence showed "a signed, notarized assignment document [from the original mortgagee to the defendant] that had also been recorded by the county clerk." 722 F.3d at 252. The court found that the homeowner's argument failed, and that there was "no doubt" that the mortgage was transferred. *Id.* at 252–53.

The same is true here. Much like the homeowner's arguments in *Martins*, Plaintiff's arguments merge common legal theories and principles. Plaintiff alleges that "[t]he  deed of trust[] and the promissory note must always be together, and without the note and the loan accounting entries, the attorney has failed to prove there was any debt . . . ." ECF No. 1-1 at 16. Plaintiff's argument under the "split-the-note" theory is not supported under Texas law. *See Martins,* 722 F.3d at 256.

Additionally, Plaintiff asserts that "Defendants have failed to produce the original promissory note, chain or title, or other documents proving they has [sic] the legal right to foreclose on the Property." ECF No. 1-1 at 19. Plaintiff attached to his Complaint

the Deed of Trust for the Property. *Id.* at 42–66. Defendants submitted the Transfer of Lien, which was recorded in Harris County. ECF No. 24-4. The Transfer of Lien states that New Century assigned and transferred the Deed of Trust for the property to Deutsche Bank. *Id.* at 2. Plaintiff's mortgage was transferred to Deutsche Bank. Deutsche Bank need not produce a wet-ink signature to foreclose. *See Martins,* 722 F.3d at 253–54.

Plaintiff also appears to assert that Defendants lacked standing to foreclose because Plaintiff owes nothing under the loan. ECF No. 1-1 at 19. He states that he "was never provided with a loan" and his "financial asset was exchanged for FED's promissory notes in an even exchange." *Id.* He argues that his "signature created the promissory note in dispute, and it was sold to the Federal Reserve in exchange for the plaintiff's signed note." *Id.* at 20. As the court previously explained, the Transfer of Lien demonstrates that New Century assigned Plaintiff's Loan to Deutsche Bank. ECF No. 24-4. There is nothing to indicate that the Loan was sold, transferred, or assigned to the Federal Reserve. And even if that were true, Plaintiff provides no explanation as to how it would reduce his debt under the Loan to zero.

Plaintiff's assertions that the Defendants lacked standing to foreclose on the Loan are baseless. The court now turns to each of Plaintiff's claims.

### 4. Analysis of Plaintiff's Claims

Plaintiff asserts claims for wrongful foreclosure, breach of contract, violations of the Fair Debt Collection Practices Act (FDCPA), violations of the Truth in Lending Act (TILA), violations of the Real Estate Settlement Procedures Act (RESPA), slander of title, slander of credit, fraud, intentional and negligent infliction of emotional distress, conspiracy to deprive him of his civil rights under 42 U.S.C. §§ 1983, 1985, and 1986, and conspiracy to violate

his civil rights under 18 U.S.C. § 241. Plaintiff appears to assert each of his claims against all of the Defendants, collectively. He fails to distinguish which defendant engaged in what alleged conduct. The court also notes that Plaintiff's allegations are almost entirely conclusory and devoid of any factual content. The court addresses each of Plaintiff's claims accordingly.

### A. Wrongful Foreclosure

Plaintiff asserts that Defendants wrongfully foreclosed on the Property. ECF No. 1-1 at 7. Under Texas law, to state a claim for wrongful foreclosure, a plaintiff must plead: (1) that there was "a defect in the foreclosure sale proceedings;" (2) that the property was sold at a "grossly inadequate price;" and (3) that there is "a causal connection between the defect and the grossly inadequate selling price." *Carey v. Fargo*, No. 15-1666, 2016 WL 4246997, at *3 (S.D. Tex. Aug. 11, 2016) (citing *Martins*, 722 F.3d at 256).

Plaintiff asserts that there were several defects in the foreclosure process, including Defendants' "fail[ure] to provide proper notice of default and right to cure," denial of Plaintiff's request for a loan modification, and use of "fraudulent documents." ECF No. 1-1 at 7. Plaintiff alleges that as a result of this conduct, he has "suffered significant financial loss, emotional distress, and damage to credit." *Id.* Plaintiff did not plead that the property was sold at a grossly inadequate price or that the alleged defects caused the property to sell at a grossly inadequate price. Because Plaintiff did not plead the required elements, he cannot recover on a claim for wrongful foreclosure.

However, even if Plaintiff had alleged that the property was sold at a grossly inadequate price, that allegation would be undermined by the facts set forth in the pleadings. A price is "grossly inadequate" when it is "a consideration so far short of the real value of the property as to shock a correct mind, and thereby

raise a presumption that fraud attended the purchase." *Cavazos Ramirez v. Laredo Nat'l Bank*, No. M-10-09, 2013 WL 12394256, at \*25 (S.D. Tex. Sep. 30, 2013) (citing *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. App.—Dallas 1932, no writ). "Courts have found prices to be 'grossly inadequate' where the foreclosure sale prices were as low as 0.007% of the property value and as high as 44.23% of the property value." *Id.* (collecting cases). At the foreclosure sale, the Property sold for $230,972.51—nearly 88% of its market value. *See* ECF No. 1-2 (Harris Co. Appraisal District Records showing that the Property's market value was $262,698 2024). Bob has not shown that the property sold at a grossly inadequate price.

Accordingly, the court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for wrongful foreclosure.

### B. Breach of Contract

Plaintiff states the elements of a breach of contract claim, but he fails to actually plead facts to support those elements. ECF No. 1-1 at 27. The elements of a breach of contract claim are (1) "the existence of a valid contract," (2) "performance or tendered performance by the plaintiff," (3) "breach of the contract by the defendant," and (4) "damages sustained as a result of the breach." *Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga.*, 892 F.3d 719, 731 (5th Cir. 2018) (citation omitted).

Plaintiff's breach of contract claim fails on the second element because Plaintiff did not perform or tender performance under the Loan. "Under Texas law, 'a party to a contract who is himself in default cannot maintain a suit for its breach.'" *Vera v. Bank of Am., N.A.*, 569 F. App'x 349–51 (5th Cir. 2014) (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)). Defendants assert that Plaintiff defaulted on the Loan, and Plaintiff's own

12

evidence shows the same—Plaintiff defaulted on the Loan by failing to make timely mortgage payments. Therefore, Plaintiff, himself in default, cannot recover for breach of contract.

Because Plaintiff cannot show that he performed or tendered performance under the Loan, as he was in default on the Loan, Plaintiff's breach of contract claim fails. The court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for breach of contract.

### C. FDCPA

Plaintiff alleges that Defendants "violated the FDCPA, including misrepresentation, fraud, harassment, unfair means, and deception to collect a debt." ECF No. 1-1 at 9. The FDCPA prohibits debt collection methods that threaten, harass, abuse, or deceive a debtor. Examples of prohibited methods include: sending a letter to a debtor that looks like it is from a government agency, using obscene or profane language when contacting a debtor, and threatening a debtor with violence or illegal action. *See* 15 U.S.C. §§ 1692d-1692j.

Plaintiff appears to allege that the Defendants' conduct violates the FDCPA because "[w]ithout [the] Note and the original deed of trust, the defendants cannot verify there was any debt." ECF No. 1-1 at 16. This rests, in part, on the "split-the-note" and "show-me-the-note" theories, which the court has already rejected. As discussed, the Loan was transferred to Deutsche Bank, and Deutsche Bank had the authority to foreclose.

Plaintiff also asserts that Defendants violated the FDCPA by making a "false misrepresentation in the course of collecting a debt." ECF No. 1-1 at 17. He states that under the FDCPA, "debt collectors can't use false, deceptive, or misleading practices." *Id.* However, Plaintiff does not explain what "false misrepresentation" Defendants are alleged to have made. He merely argues that an

13

unnamed debt-collector's "attorney violates the FDCPA, as they do not have a license to collect a debt, they have no bond in place to be a debt collector[,] and they are not registered in the States they are attempting to collect in." *Id.* at 16; *see also id.* at 9 ("The law firm, or the attorney, did not meet the requirements mandated in the [FDCPA] necessary to be a legal debt collector."). He asserts "the defendant used and misrepresented to the court as a licensed attorney when he did not have a license to practice law." *Id.* at 14. These bare, conclusory, and difficult-to-follow allegations are insufficient under the federal pleading standard. Plaintiff does not name the "debt collector," attorney, or law firm; he does not state what relationship the "debt collector," attorney, and law firm have with the Defendants; and he provides nothing to substantiate his arguments regarding the attorney's licensure or the law firm's status.

The court also notes that Plaintiff has not shown that Defendants fall within the scope of the FDCPA. Section 1692g of the statute imposes certain obligations on debt collectors. A "debt collector" under the FDCPA is "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). However, mortgage lenders and servicers are generally not "debt collectors" within the meaning of the FDCPA. *Montgomery v. Wells Fargo Bank, N.A.*, 459 F. App'x 424, 428–29 n.1 (5th Cir. 2012); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). A mortgage lender or servicer may be a debt collector for purposes of the FDCPA if it becomes a mortgage lender or servicer after the debt was in default. *Smith v. First Choice Loan Servs. Inc.*, No. 20-CV-00321, 2020 WL 5759967, at *3 (N.D. Tex. Sept. 28, 2020). Defendants Deutsche Bank and New Century do not fall within the definition of "debt collector" based on the pleadings before the court, as the debt was assigned to Deutsche Bank from New

14

Century prior to Plaintiff's default. As to the other defendants, Plaintiff fails to provide any facts sufficient to demonstrate that Defendants' principal business is collecting debts or that they regularly collect debts or attempt to collect debts for someone else.

For these reasons, the court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for violations of the FDCPA.

### D. TILA Regulation Z, 12 C.F.R. § 226.23

Plaintiff alleges that Defendants violated TILA Regulation Z, 12 C.F.R. § 226.23, "by failing to disclose key loan information." ECF No. 1-1 at 7. TILA specifies the "disclosures that must be made in certain consumer credit transactions." *Schieroni v. Deutsche Bank Nat'l Tr. Co.*, No. 10-0663, 2011 WL 3652194, at *3 (S.D. Tex. Aug. 18, 2011). If disclosure obligations are not satisfied, a consumer may have the right to rescind the transaction under Regulation Z. *Id.*; 12 C.F.R. § 226.23. "There is no right of recission, however, with respect to 'residential mortgage transactions.'" *Id.* (citing 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1); *Perkins v. Cent. Mortg. Co.*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006)). "A 'residential mortgage transaction' means 'a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.'" *Id.* (citing 15 U.S.C. § 1602(w)).

Under Plaintiff's heading for "Violation of The Truth in Lending Act," he states:

> The defendants violated the Truth in Lending Act, Regulation Z, 12 CFR §226.23, which states that the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures. The original debt was actually zero because the Plaintiff's financial assets were exchanged for FED's promissory notes in an even exchange. The defendant misled the State Court when they executed

15

> the unlawful foreclosure and case against the plaintiff's property. . . .
>
> . . . The attorney does not have a license to practice law and therefore is not qualified to represent a fictious corporation in court. . . .

ECF No. 1-1 at 11 (citing ECF No. 1-1 at 32–41). From this, it is difficult to decipher the basis of Plaintiff's TILA claim. But it is clear that Plaintiff's allegations pertain to a "residential mortgage transaction." As such, the right to recission does not apply.

The court has already rejected Plaintiff's assertions that Defendants lacked standing, that the original debt was reduced to zero, and that the unidentified attorney lacks appropriate licensure. These arguments do not impact the court's analysis on this claim.

Plaintiff has not stated a claim under TILA. Accordingly, the court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for violations of TILA.

### E. RESPA Regulation X, 12 C.F.R. § 1024.41

Plaintiff alleges that Defendants violated RESPA by failing to review Plaintiff's request for loan modification. ECF No. 1-1 at 7. Under RESPA, mortgage lenders and servicers are prohibited from engaging in "dual tracking," which is the practice of "actively pursu[ing] foreclosure while simultaneously considering the borrower for loss mitigation options." *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016) (citing 12 C.F.R. § 1024.41(g)). "However, Section 1024.41(g) only applies where 'a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale.'" *Id.* (citing 12 C.F.R. § 1024.41(c)). Therefore, to survive a motion to dismiss for failure to state a claim, a plaintiff must plead—or provide evidence to show—that he submitted a complete loss mitigation application more than 37 days before the foreclosure sale. *Id.*

Plaintiff asserts only that he "requested loan modification or other loss mitigation options . . . ." ECF No. 1-1 at 7. Plaintiff pleads no additional facts related to the method, timing, or completeness of his requests for loan modification or loss mitigation. For these reasons, Plaintiff has not sufficiently pleaded his claim for violation of RESPA Regulation X. The court recommends that Defendants' Motion to Dismiss be **GRANTED** as to this claim.

### F. Slander of Title

"'Slander of title' is defined as a false and malicious statement made in disparagement of a person's title to property which causes special damages." *Elijah Ragira/VIP Lodging Grp., Inc. v. VIP Lodging Grp., Inc.*, 301 S.W.3d 747, 758 (Tex. App.—El Paso 2009, no pet.) (citations omitted). To state a claim for slander of title, the plaintiff must show: (1) defendant uttered and published the disparaging words; (2) that the words were false and malicious; (3) that plaintiff sustained special damages; (4) that the plaintiff possessed an interest in the disparaged property; and (5) that the plaintiff lost a specific sale as a result of defendant's actions. *Id.* at 759 (citations omitted).

Plaintiff has not presented sufficient evidence that any of the Defendants made a false or malicious statement regarding the authority to foreclose. *See Storm Assocs., Inc. v. Texaco, Inc.*, 645 S.W.2d 579, 588 (Tex. App.—San Antonio 1982) ("A claim of title does not constitute malice where the claim is made under color of title or upon reasonable belief that parties have title to the property acquired."), *aff'd sub nom.*, *Friedman v. Texaco, Inc.*, 691 S.W.2d 586 (Tex. 1985). Plaintiff also failed to plead that he sustained special damages and that he lost a specific sale of his home. Accordingly, the court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for slander of title.

### *G. Slander of Credit and Fair Credit Reporting Act*

Plaintiff asserts a claim for "slander of credit." ECF No. 1-1 at 28. There is some dispute over the recognition of this claim, and if it is a recognized claim, what elements are required. *See* ECF No. 24 at 29–31. However, the Fifth Circuit has construed a claim for slander of credit, in the context of a wrongful foreclosure, as a claim for defamation of the plaintiff's credit. *Payne v. Wells Fargo Bank, N.A.*, 637 F. App'x. 833, 838 (5th Cir. 2016). "Under Texas law, '[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Id.* (citing *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006)). In support of this claim, Plaintiff merely pleads "that the actions and inactions of the defendants have impaired their credit." *Id.* Plaintiff did not assert that any of the Defendants provided false information about him to a credit reporting agency or otherwise.

Defendants argue that slander of credit claims "are preempted by the Fair Credit Reporting Act (FCRA), 15 U.S.C § 1681s-2(b), unless a plaintiff shows that the defendant acted 'with malice or willful intent to injure' in furnishing false information to a credit reporting agency." ECF No. 24 at 29–30 (citing *Sheets v. Wells Fargo Bank, N.A.*, No. 12-4534, 2013 WL 5914404, at *4 (N.D. Tex. Sep. 11, 2013)). Plaintiff did not plead facts sufficient to show that Defendants acted with malice or with willful intent to injure Plaintiff's credit.

To the extent that Plaintiff intended to assert a claim for violation of the FCRA, that claim would also fail. "Liability under the FCRA attaches only after the furnisher of credit information has received notice of a dispute from a credit reporting agency[.]" *Schultz v. HomeBridge Fin. Servs., Inc.*, No. 24-50193, 2025 WL 1467431 (5th Cir. May 22, 2025). Plaintiff has not pleaded facts

18

sufficient to establish if, when, or how he notified a credit reporting agency of any dispute.

For these reasons, the court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for slander of credit and any claim Plaintiff may have intended to assert under the FCRA.

### H. Fraud

Plaintiff asserts that Defendants committed fraudulent conduct during the foreclosure proceedings. ECF No. 1-1 at 8. To allege a claim of fraud under Texas law, a plaintiff must allege: (1) a material misrepresentation; (2) the representation was false; (3) the defendant either knew the representation was false or recklessly asserted it without knowledge of its truth; (4) the defendant intended that the plaintiff should act upon the representation; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff was injured as a result. *Harris Cnty. v. MERSCORP Inc.*, 791 F.3d 545, 558 (5th Cir. 2015) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)). A plaintiff's fraud claim must meet the heightened level of pleading required under Federal Rule of Civil Procedure 9(b). *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 39 (citing *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).

Plaintiff failed to meet the pleading standard required under Rule 9(b). Plaintiff pleads that:

> Defendants engaged in fraudulent conduct by submitting false documents, misrepresenting the

> ownership of the loan, and failing to properly assign the mortgage to the appropriate entity. Defendants knew or should have known that their actions were fraudulent and intended to mislead Plaintiff and the court into having the foreclosure to proceed.

ECF No. 1-1 at 8. Plaintiff does not specify *what* "false documents" were submitted, *who* is alleged to have misrepresented the Loan's ownership, or *when* that alleged misrepresentation occurred. And the court has already explained why it rejects Plaintiff's assertion that the assignment of the Loan to Deutsche Bank was improper. It will not repeat that analysis here.

Because Plaintiff has not met the pleading requirements under Rule 9(b), the court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for fraud.

### I. *Infliction of Emotional Distress*

Plaintiff asserts claims for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED). ECF No. 1-1 at 28. To state a claim for IIED under Texas law, a plaintiff "must demonstrate that the defendant intentionally or recklessly engaged in extreme or outrageous conduct that resulted in severe emotional distress." *Stelly v. Duriso*, 982 F.3d 403, 407–08 (5th Cir. 2020) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 66 (Tex. 1998)). "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (*quoting Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). The plaintiff must also demonstrate that there is no alternative cause of action available to redress the alleged misconduct. *Stelly*, 982 F.3d at 408 (citing *Hoffmann-La Roche*, 144 S.W.3d at 447). That is because "IIED is

a 'gap-filler' tort reserved for 'those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress.'" *Id.* (quoting *Hoffman-La Roche*, 144 S.W.3d at 447).

Plaintiff has not alleged facts demonstrating "extreme or outrageous conduct" by any of the Defendants. Plaintiff also has not alleged that he suffered "severe emotional distress." Accordingly, Plaintiff has not stated a claim for IIED.

NIED is not generally recognized as a cause of action in Texas. *Chapa v. Traciers & Assocs.*, 287 S.W.3d 388, 398 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993)). "[T]here is no general duty in Texas not to negligently inflict emotional distress." *Boyles*, 855 S.W.2d at 594. Because of this, instead of pursuing an NIED claim, "[a] claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty." *Id.* Therefore, Plaintiff's claim for NIED fails.

For these reasons, the court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claims for IIED and NIED.

### J. Conspiracy to Deprive of Civil Rights under 42 U.S.C. §§ 1983, 1985, and 1986

Plaintiff asserts that Defendants engaged in a conspiracy to deprive him of property, in violation of due process under 42 U.S.C. §§ 1983, 1985, and 1986. ECF No. 1-1 at 15. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations and citations omitted). Section 1983 provides redress for those who have been injured or deprived of their rights under color of state law. 42 U.S.C. § 1983; *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017).

21

Plaintiff asserts that he was deprived of his property, through the foreclosure proceedings, without due process. ECF No. 1-1 at 15. "[F]oreclosure procedures implicate the Fourteenth Amendment only where there is at least some direct state involvement in the execution of the foreclosure or seizure." *Pease v. First Nat'l Bank*, 335 F. App'x. 412, 414 (5th Cir. 2009). The Fifth Circuit "has held that 'no significant state action is involved in non-judicial foreclosures under a deed of trust.'" *Id.* (quoting *Barrera v. Sec. Bldg. & Inv. Corp.*, 519 F.2d 1166, 1170 (5th Cir. 1975)). Because this case involves a non-judicial foreclosure under a Deed of Trust, there is no significant state action that would implicate the Fourteenth Amendment. Thus, there was no violation of Section 1983. And without an actual violation of Section 1983, "a conspiracy claim [under Section 1985] is not actionable." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). Similarly, without a conspiracy under Section 1985, the alleged co-conspirators cannot be held liable under Section 1986.

Accordingly, the court recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for conspiracy to deprive him of his civil rights under 42 U.S.C. §§ 1983, 1985, and 1986.

### K. Conspiracy to Violate Civil Rights under 18 U.S.C. § 241

Plaintiff attempts to assert a civil claim under a federal criminal statute, 18 U.S.C. § 241. ECF No. 1-1 at 15. "[A] private right of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The criminal statute at issue, 18 U.S.C. § 241, "do[es] not display any indication of Congressional intent to create a private right and a private remedy[.]" *Deramus v. Shapiro Schwartz, LLP*, No. 19-4683, 2020 WL 3494558, at *3 (S.D. Tex. June 2, 2020), *R. & R. adopted*, 2020 WL 34919160 (S.D. Tex. June 26, 2020). Accordingly, the court

recommends that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's claim for conspiracy to violate his civil rights under 42 U.S.C. § 241.

### 5. *Leave to Amend is Denied*

"Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). If the plaintiff seeks leave to amend, he "must give the court at least some notice of what . . . her amendments would be and how those amendments would cure the initial complaint's defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citation omitted). The court may deny leave "[i]f the plaintiff does not provide a copy of the amended complaint [or] explain how the defects could be cured[.]" *Id.* (citation omitted). The court may also deny leave to amend when amendment would be futile or when the plaintiff chooses to stand on her complaint and argues that it satisfies the pleading requirements. *See Khoury v. Thota*, No. 20-20578, 2021 WL 3919248, at *4 (5th Cir. Sep. 1, 2021) (affirming the district court's denial of leave to amend when the plaintiff chose to stand on his complaint and argued that it satisfied the pleading requirements); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (discussing futility of amendment as justification for denying leave to amend).

In early April 2025, the court granted Plaintiff leave to amend his complaint within twenty-one days. ECF No. 20. The court warned that it was not likely to grant future leave to amend. *Id.* Plaintiff failed to comply with the court's order. Defendants then filed the instant motion. Plaintiff did not respond. Five weeks after Defendants filed their Notice of No Response, ECF No. 26, Plaintiff filed a Motion for Leave to File an Amended Complaint.

23

ECF No. 27 (Second Motion for Leave to Amend). This Second Motion for Leave to Amend was filed more than four months after the court initially granted Plaintiff leave to amend.

The court struck Plaintiff's Second Motion for Leave to Amend for failure to comply with the Southern District of Texas's Local Rules. ECF No. 46. Since then, Plaintiff has not made any additional requests for leave to amend.

Based on the amendments that Plaintiff proposed in his Second Motion for Leave to Amend, as well as the nature of the defects in Plaintiff's Complaint, the court has no reason to believe that Plaintiff could amend his Complaint to remedy its defects. Therefore, the court concludes that amendment would be futile. Any request for leave to amend is denied.

### 6. *Remaining Motions*

Plaintiff's remaining motions—the various Motions for Leave, ECF Nos. 38, 41, 42, 49, 50; and the Motion to Declare Conveyance, ECF No. 51—do not affect the court's analysis. Because the court finds that all of Plaintiff's claims should be dismissed, these remaining motions are **DENIED as MOOT**.

### 7. *Conclusion*

Because Plaintiff failed to state a claim against Defendants, the court recommends that Defendants' Motion to Dismiss, ECF No. 24, be **GRANTED**, and that all of Plaintiff's claims against Defendants be **DISMISSED WITH PREJUDICE**.

Additionally, Plaintiff's Motions for Leave to Refile Stricken Motions, ECF Nos. 38, 41, 42; Plaintiff's Motion for Leave to Conduct Limited Discovery, ECF No. 49; Plaintiff's Motion for Leave to File a Jurisdictional Notice and a Motion Addressing Standing, ECF No. 50; and Plaintiff's Motion to Declare Conveyance, ECF No. 51, are **DENIED as MOOT**.

24

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on February 19, 2026.

_____
Peter Bray
United States Magistrate Judge